## A01A0721. MOORE v. THE STATE.
(550 SE2d 667)

PHIPPS, Judge.

A jury found Timothy Moore guilty of armed robbery and aggravated assault. He challenges the sufficiency of the evidence to support his convictions and complains that the trial court erred by (1) failing to establish that his waiver of counsel was knowing and intelligent, (2) failing to merge his convictions, and (3) considering evidence of prior convictions in aggravation of sentencing. We agree that Moore's convictions should have merged, but we reject his other claims of error.

Taken in the light most favorable to the verdict,[1] the evidence showed that, on the morning of May 25, 1996, two men entered a convenience store in Brunswick. One man bought a drink, then the other man went behind the counter and placed a knife at the clerk's neck, cutting him. The man with the knife grabbed money from the cash register, and both men left the store. The incident was recorded on the store's videocamera, and the videotape was played for the jury.

Although the clerk testified that he did not get a good look at the robber's face, he was able to tell the police that the robber was wearing tan shorts, a brown striped shirt, and a baseball cap. The police quickly combed the area and stopped Dion Saddler, who admitted

---

[1] See *Hudson v. State*, 242 Ga. App. 218 (1) (529 SE2d 218) (2000).

being in the store at the time of the robbery but denied being the robber. The police took Saddler back to the store, where the clerk confirmed that Saddler had been present but had not wielded the knife. The police then took Saddler to the station, where he identified Moore as the robber from a set of photographs.

Within approximately one hour of the robbery, the police saw Moore leaving a house near the convenience store. Moore was wearing maroon shorts, but the officers saw a pair of tan shorts underneath them. Inside the house, they found a striped shirt and a cap, which both the clerk and Saddler identified as the robber's clothing. The police took Moore to the store, where the clerk said he was "pretty sure" Moore was the robber but "couldn't swear to it."

Saddler testified that he and Moore had met earlier that morning and had gone to the store together. He testified that, to his surprise, Moore suddenly pulled out a knife and robbed the clerk.

Both Saddler and Moore were charged with armed robbery and aggravated assault, but Saddler was given immunity in exchange for testifying against Moore.

1. Contrary to Moore's assertion, the evidence was sufficient to support his armed robbery conviction. Moore argues that the quality of the store videotape was poor, but the State also presented the testimony of the store clerk and Saddler identifying Moore as the robber and identifying clothing found on and near Moore as that worn by the robber. The credibility of those witnesses and the accuracy of their identifications were matters for the jury.[2]

We need not address Moore's challenge to the sufficiency of the evidence to support his aggravated assault conviction because, as explained in Division 3, that conviction must be vacated for other reasons.

2. Shortly before trial, Moore's appointed counsel told the court that Moore wanted to represent himself. The following exchange occurred:

THE COURT: Are you familiar with the procedures and principles of law, Mr. Moore?
MR. MOORE: No, sir, but I —.
THE COURT: Do you know how to select a jury?
MR. MOORE: No, sir, I don't, but —.
THE COURT: Do you know the proper questions to ask the jurors and witnesses in the case?
MR. MOORE: No, sir, I don't.
THE COURT: Have you had any legal training whatsoever?

---

[2] See *Arrington v. State*, 244 Ga. App. 529, 531 (536 SE2d 212) (2000); *Morton v. State*, 241 Ga. App. 330, 331 (526 SE2d 862) (1999).

MR. MOORE: No, sir, I haven't.

THE COURT: Why do you wish to represent yourself?

MR. MOORE: Because I don't feel like I've been properly represented. I've been in jail for 16 months for a crime I didn't commit, only on hearsay. All the evidence in this case showed that I didn't do the crime —.

THE COURT: Well, that's not an argument, that's not a proper argument to me at this point. The grand jury has seen fit to indict you and that is sufficient to get you before this court for a jury trial. I will permit you to represent yourself within the parameters of the law, but I instruct you that you are committing a very dangerous act and you are putting your freedom and your well-being in extreme jeopardy. And I'm going to insist that [appointed counsel] continue to represent you during this proceeding, but you will have a right to make decisions and to question witnesses before the jury that's selected in this case; however, you will be bound by the same rules of law and the same rules of procedure that a lawyer is bound by. And simply because you're representing yourself does not mean you will be able to do what you want to do. You understand that?

MR. MOORE: I understand that.

THE COURT: All right. Bring in the jury.

Moore contends that the trial court failed to determine on the record whether he made a valid waiver of his right to counsel. Before allowing a defendant to proceed pro se, the trial court must discharge its "serious and weighty responsibility" of determining whether the defendant has knowingly and intelligently waived his right to counsel.[3] To be valid, a waiver must be made "with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter."[4] Our Supreme Court has held that "the record should reflect a finding on the part of the trial court that the defendant has validly chosen to proceed pro se. The record should also show that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel."[5]

We agree with Moore that the trial court's inquiry into his desire

---

[3] *Clarke v. Zant*, 247 Ga. 194, 196 (275 SE2d 49) (1981).

[4] (Citation and punctuation omitted.) *Kirkland v. State*, 202 Ga. App. 356, 357-358 (1) (414 SE2d 502) (1991).

[5] *Clarke*, supra at 197.

to proceed pro se was cursory and that the record does not reflect that Moore's decision was made with a full apprehension of his circumstances.[6] However, we also agree with the State that any error on the part of the trial court was harmless beyond a reasonable doubt.

First, Moore was not entirely without benefit of counsel. Moore's lawyer represented him at pre-trial proceedings and filed pre-trial motions on his behalf. At the court's direction, counsel sat next to Moore and consulted with him throughout the trial. The court gave counsel an opportunity to cross-examine each of the State's witnesses, although counsel declined and allowed Moore to conduct the examinations. Finally, when Moore testified in his own behalf, counsel led him through his direct testimony.[7]

Second, the transcript shows that Moore understood the evidence against him and presented an able, though unsuccessful, defense of misidentification. He thoroughly cross-examined the State's witnesses and pointed out weaknesses in their testimony. For example, during his lengthy questioning of Saddler, Moore elicited the information that Saddler had received immunity from prosecution in exchange for his testimony, had been under the influence of powerful drugs before the robbery, and had served time in prison for a previous armed robbery. Similarly, Moore's cross-examination of the store clerk highlighted the fact that he did not get a good look at the robber.

Finally, we are unaware of any defenses or trial strategies that Moore overlooked or any evidence he failed to present. Although it is the State's burden to establish that the lack of counsel was harmless error,[8] we note that Moore has not alleged any harm. The evidence against Moore was strong and relatively straightforward. Under these circumstances, it is unlikely that Moore's conviction was attributable to his decision to represent himself.[9]

3. We agree, as does the State, with Moore's contention that his aggravated assault conviction should have merged with his armed robbery conviction. As we held in *King v. State*,[10] "[t]he only violence employed against the victim in this case was that which was used to effectuate the theft. Because the violence preceded the theft and was

---

[6] For example, during sentencing, Moore told the court that he thought he was not subject to the recidivist statute because his prior convictions were for nonviolent crimes.

[7] See *Rutledge v. State*, 224 Ga. App. 666, 670-671 (3) (482 SE2d 403) (1997) (no harm in allowing defendant to proceed pro se where, among other things, "court-appointed counsel provided assistance to him during trial").

[8] *State v. Hightower*, 236 Ga. 58, 60 (222 SE2d 333) (1976).

[9] See *Reviere v. State*, 231 Ga. App. 329, 331 (1) (498 SE2d 332) (1998); *Lazenby v. State*, 181 Ga. App. 854, 855 (1) (354 SE2d 196) (1987).

[10] 241 Ga. App. 894 (528 SE2d 535) (2000).

the means by which [Moore] secured the victim's compliance with his demand, the aggravated assault conviction merged with the armed robbery conviction. [Cits.]"[11] Accordingly, Moore's aggravated assault conviction is vacated.

4. Before trial, the State gave Moore notice that it intended to seek sentencing under Georgia's recidivist statute, OCGA § 17-10-7. At sentencing, the State offered into evidence certified copies of previous guilty pleas by Moore to four drug crimes and an auto theft. The trial court then sentenced Moore to life imprisonment without parole on the armed robbery charge.

Moore argues that the enhanced sentence is invalid because the trial court never admitted into evidence the certified copies of his convictions. However, we rejected this very argument in *Parker v. State*.[12] In that case, although the defendant's prior convictions were not formally admitted into evidence, "[the defendant] did not object, they are a part of the record on appeal, and they were apparently treated as evidence at the sentencing hearing."[13] We therefore ruled that the trial court did not err in considering the prior convictions.

Moore also suggests that the guilty pleas could not be considered because they were not voluntary. Under *Nash v. State*,[14] after the State proves the existence of a prior guilty plea and that the defendant was represented by counsel, the burden shifts to the defendant to produce evidence that the plea was invalid. Here, the State presented certified copies of the pleas signed by both Moore and his counsel, and Moore never disputed their validity.[15] Accordingly, he has waived any such challenge.[16]

*Judgment affirmed in part and vacated in part. Smith, P. J., and Barnes, J., concur.*

DECIDED JUNE 13, 2001 —

*James J. Lacy*, for appellant.
*Stephen D. Kelley, District Attorney, Charles K. Higgins, Assistant District Attorney*, for appellee.

---

[11] Id. at 895 (1).
[12] 220 Ga. App. 303, 312 (13) (469 SE2d 410) (1996).
[13] Id.
[14] 271 Ga. 281, 284 (519 SE2d 893) (1999).
[15] To the contrary, Moore admitted to the court that "I have priors."
[16] See *Anthony v. State*, 236 Ga. App. 257, 260 (4) (511 SE2d 612) (1999).